## NATIONAL HARROW CO. v. QUICK et al. [1]

(Circuit Court, D. Indiana. March 23, 1895.)

No. 8,818.

1. MONOPOLIES AND COMBINATIONS — CONTROL OF PATENTS — PUBLIC POLICY— EQUITY.

A corporation organized for the purpose of securing assignments of all patents relating to "spring-tooth harrows," to grant licenses to the assignors to use the patents upon payment of a royalty, to fix and regulate the price at which such harrows shall be sold, and to take charge of all litigation, and prosecute all infringements of such patents, is an illegal combination, whose purposes are contrary to public policy, and which a court of equity should not aid by entertaining infringement suits brought in pursuance thereof.

2. PATENTS—INVENTION—PRIOR ART—SPRING-TOOTH HARROWS.

The Reed patent, No. 201,946, for improvements in spring-tooth harrows, consisting substantially in the adjustment of a curved tooth to a curved seat on the harrow frame, and fastened thereto by a curved clip having biting edges, *held* valid, in deference to prior decisions sustaining the same, although the court was of opinion that, in view of the prior state of the art, no invention was displayed; but *held*, further, that the patent should be limited to the very terms of the specifications and claims, and that it is therefore not infringed by harrows made in accordance with the Miller patent, No. 444,248.

This was a bill by the National Harrow Company against Frank Quick and E. Lindahl for infringement of a patent relating to spring-tooth harrows.

N. H. Stuart and Howard & Roos, for complainant.

V. H. Lockwood, for defendants.

BAKER, District Judge. This is a bill in equity to recover damages, and to restrain the alleged infringement of letters patent No. 201,946, issued April 2, 1878, to Dewitt C. Reed, for alleged new and useful improvements in harrows, which complainant now holds by divers mesne assignments.

The defenses interposed and relied on at the hearing are: (1) That the complainant is a combination or trust attempting to hold and use its naked legal title as assignee for purposes contrary to public

[1] Rehearing denied April 13, 1895.

policy, and that a court of equity ought not to aid its unlawful purposes by entertaining the present bill; (2) that the alleged improvements secured by the patent do not involve invention; (3) that the defendants do not infringe.

The complainant is a corporation purporting to be organized under the laws of the state of New Jersey. The purpose of its organization, as shown by the proofs, is to become the assignee of all the patents held by the different corporations and business firms in the United States which are engaged in the manufacture and sale of spring-tooth harrows; to grant licenses to such corporations and firms to use the patents so assigned upon the payment by them of a royalty of one dollar for each harrow manufactured and sold; to take charge of all litigation of its licensees in relation to such patents, and to prosecute all infringements of any patent so assigned; to pay all costs and expenses of such litigation; and to fix and regulate the price at which such harrows shall be sold by its licensees. The complainant corporation is not organized for the manufacture and sale of harrows under the patents assigned to it, nor has it ever engaged in their manufacture and sale. A majority of all the corporations and firms engaged in the manufacture and sale of spring-tooth harrows in the United States have assigned the patents owned by them, respectively, to the complainant, and have received from it licenses to manufacture and sell harrows under the patents severally assigned by them to it. The patent in suit is one of those so assigned to the complainant by D. C. & H. C. Reed & Co., who have received an exclusive license from the complainant to manufacture and sell harrows under that patent practically in all the territory covered by it. So far as I can perceive, the complainant is organized to receive assignments of the legal title of harrow patents, to grant back licenses to their assignors to use and enjoy the same, to collect from each member of the combination or trust one dollar as a license fee for each harrow manufactured and sold, to regulate and control the price at which harrows may be sold by the members of the combination, and to prosecute and defend all suits involving the alleged infringement of such assigned patents.

It seems to me that such a combination is illegal, and that its purposes are violative of sound public policy. The common law forbids the organization of such combinations, composed of numerous corporations and firms. They are dangerous to the peace and good order of society, and they arrogate to themselves the exercise of powers destructive of the right of free competition in the markets of the country, and, by their aggregate power and influence, imperil the free and pure administration of justice. Strait v. Harrow Co. (Sup.) 18 N. Y. Supp. 224; Richardson v. Buhl, 77 Mich. 632, 43 N. W. 1102; Emery v. Candle Co., 47 Ohio St. 320, 24 N. E. 660; State v. Nebraska Distilling Co., 29 Neb. 700, 46 N. W. 155.

Complainant says that its title to the patent in question is valid, and that it has a lawful right to its protection from invasion by a stranger, regardless of the objects and purposes of the combination which it represents. On the other hand, the defendants contend that to give its title protection would be to give aid to the unlawful pur-

poses of the combination. In suits at law it is doubtless true, as a general proposition, that a wrongdoer will not be permitted to dispute the legal title of one in possession of money or property by showing that the title thereto was unlawfully acquired, or that the owner intends to apply it to an unlawful use. I have strong doubts whether this rule ought to apply to a suit in equity, where nothing but clean hands and a good conscience will move the court to act. The combination represented by the complainant is not illegal in any other sense, except that the law will not lend its aid to the accomplishment of its purposes. The common law does not prohibit the making of such combinations. It merely declines, after they have been made, to recognize their validity, by refusing to make any decree or order which will in any way give aid to the purposes of such combinations. It seems to me that the court cannot sustain the present bill without giving aid to the unlawful combination or trust represented by the complainant. The question is not free from doubt, but in a case of doubt I feel it my duty to resolve it in such a way as will not lend the countenance of the court to the creation of combinations, trusts, or monopolies. They have already grown to alarming proportions, and courts, to the full extent of their powers, ought to discountenance and repress them.

Turning to the patent in question, we find that the "invention relates to improvements in harrows, and more particularly to that class of harrows wherein the teeth are spring teeth or of bow form." It "consists more particularly in a novel means for adjusting the said tooth so as to give to its point a greater or less depth of cut, which is effected by making that portion of the tooth which is adjacent to the frame curved and resting on a curved seat, and securing it thereto by a clip or its equivalent, by the loosening of which the tooth may be thrown forward or pushed back beneath its fastening, thus lowering or raising its point. The crossbar or loop portion of the clip is formed concave upon its underside, and with a concavity greater than the corresponding portion of the harrow tooth; so that, when brought down to a firm bearing upon the tooth, this cross portion of the clip will find a firm bearing at its edges upon its curved seat. Instead of employing a continuous clip, that part resting upon the tooth may be simply a bar or plate perforated at its ends for the passage of bolts, which bolts are drawn snugly by nuts upon the other side of the frame. So, also, a plate might rest upon the harrow tooth, and be held in its place by an ordinary clip, of uniform dimensions throughout, the plate not being perforated, but simply grooved along that portion where the clip passes, in order to hold the clip in its place. Other forms will readily suggest themselves, the principal feature of my invention being that the tooth shall rest upon a curved seat, and be capable of being adjusted longitudinally through its said seat, and thereby either elevate or depress its working point. I am aware that it is not new with me, broadly considered, to adjust a harrow tooth longitudinally upon its frame, so as to vary the depth of the cut thereof, and hence I do not include the same in my invention. What I claim is: (1) The combination, with a harrow frame and harrow tooth secured thereon,

so as to be longitudinally adjusted, of a fastening clip formed as described, whereby only its two transverse edges have a bearing against the tooth, substantially as set forth. (2) The combination, with a harrow frame provided with a curved seat, of a curved tooth and clip or its equivalent, D, substantially as and for the purposes described."

The patentee does not claim the curved tooth, nor the curved seat, nor the curved or concave clip with its biting edges, nor the longitudinal adjustability of the harrow tooth upon its frame, as his invention. Each of these elements was old and well known. The problem which he proposed to himself was to adjust a curved tooth to a harrow beam so that it could be readily moved in the direction of its length, and thus elevate or depress the point of the tooth. The invention consists in resting the harrow tooth upon a curved seat, and fastening it in place with an adjustable curved or concave clip having biting edges. In view of the prior state of the art, disclosed in the record, and which may be found fully set out in Reed v. Smith, 40 Fed. 882, I am of the opinion that the adjustment of a curved tooth to a curved seat on the harrow frame, and fastened thereto by a curved clip having biting edges, does not amount to invention. It seems to me that a skillful mechanic, familiar with the construction of harrows, could have devised the method of adjusting and fastening the tooth covered by the patent by the simple exercise of mechanical skill. While such is my opinion, I feel bound to hold this patent to be valid out of deference to many former adjudications in which it has been sustained. It ought not, however, to receive a construction broader than the very terms of the specification and claims require.

As said in Reed v. Smith, supra:

"We find it impossible to escape the conclusion that the clip, which lies at the foundation of the plaintiff's patent, is limited to a curved clip with biting edges, designed to hold the tooth rigidly to its seat."

The patent then embraces a curved clip, having biting edges, in connection with a curved tooth and a curved seat for the same. The specification declares that "the principal feature of the invention is that the tooth shall rest upon a curved seat."

The defendants are alleged to have infringed by the sale of harrows manufactured under letters patent No. 444,248, dated January 6, 1891, issued to Huson V. Miller for an alleged improvement in spring-toothed harrows. In this patent the harrow beam has a channel crossing its underface, in which channel a flat metal plate is fastened by a pin, and the tooth is placed in the channel, and rests against the metal plate at its outer edges, and is fastened by an ordinary flat clip, which comes in contact with the tooth at a point situated centrally in relation to the edges of the plate, and upon its convex side. When the clip is drawn down upon the convex side of the tooth, it presses the concave side of the tooth firmly upon the outer edges of the plate, thus holding the tooth in place. The tendency of the pressure of the clip is to slightly elevate the point of the tooth. While the result produced by each device is the same,

the means used to produce it differ. In the defendants' device the tooth does not rest on a curved seat, nor is it held in place by a curved clip having biting edges. The patent office evidently considered the difference between the two devices so substantial that the Miller patent was not regarded as an infringement of the complainant's patent.

In view of the narrow construction which I feel constrained to put upon the complainant's patent, I do not regard the Miller patent as embodying an infringing device; and, as that device is the one used in the harrows sold by the defendants, they cannot be held liable for infringement. The bill is therefore dismissed for want of equity, at complainant's costs.