NATIONAL FOLDING-BOX & PAPER CO. v. GAIR.

(Circuit Court, E. D. New York. October 16, 1899.)

PATENTS—INFRINGEMENT—FOLDING PAPER BOXES.
   The Wilson patent, No. 286,360, for improvements in folding paper boxes, which covers a box with the bottom extended to form an end piece, which passes up, and is folded down over the inturned ends of the side pieces, into which it locks by means of tongues passing into slits cut in such inturned ends, construed, and *held* not anticipated and infringed.

This was a suit in equity by the National Folding-Box &. Paper Company against Robert Gair for infringement of a patent.

Walter D. Edmonds, for complainant.

Dickerson & Brown, Mr. Brown, and Mr. Goldsborough, for defendant.

THOMAS, District Judge. The complainant seeks to restrain the infringement by the defendant of letters patent No. 286,360, of October 9, 1883, for improvements in folding paper boxes, granted to Arthur G. Wilson, and since 1891 owned by the complainant. The defense involves anticipation and noninfringement. The alleged infringement relates to claim 1, which is as follows:

"A box or lid of a box having turned-in portions provided with apertures or openings, and an end piece provided with a tongue or tongues folded over the upper edges of the turned-in portions, and down into the apertures or openings therein, substantially as and for the purposes set forth."

It is urged on behalf of the complainant that:

"The two longer sides of the box are maintained in rectangular position, relatively to the bottom, by having their inwardly turned projections, c, c, overlapped and grasped by an inwardly folded and downwardly held projection from the extension, d, of the bottom, D. This projection, hinging on its connecting creased line, constitutes a 'lever,' whose fulcrum is at the crease, while the extremity of its operative arm, the tongue, g, is 'loosely' held in the slit, m, of the loose inturned projection, c."

This description of the function performed by the end piece folded over the upper edges, with its tongues passed into the apertures or openings, is correct; that is, such end piece, with its tongues caught

into the apertures in the way suggested, closes and holds together the end of the box, and for the reason stated.

It is urged on behalf of the defendant that this function was anticipated by patent No. 239,413, issued to the same Wilson, by the Arthur patent, No. 190,603, by the King patent, No. 219,243, and by several other patents to which it is not necessary to call specific attention. It is considered that the defendant's claim cannot be sustained. The Arthur box is evidently held together by the interlocking side pieces, perhaps with some assistance from the end piece. It is apparent from the specification in this patent that Arthur had no conception whatever of the function that is performed by the end piece, which is folded over the upper edges of the turned-in portions in the patent in suit. Without the interlocking end pieces, the Arthur box would immediately fall apart, but it may be kept in position by such interlocking parts, even though the end piece be not folded over the turned-in portions, although it must be admitted that such end piece does tend to hold down, and thereby to keep the turned-in portions in an interlocked state. The first patent issued to Wilson relates to the end of an inner box, intended to be pushed into an exterior cover. The ends of the inner box are turned in, an end piece folds over such turned-in portions, and the tongue passes into a slit at the base of the inturned portion. This tongue, drawn into the slit, holds the ends together, but the end piece in no wise fastens into the turned-in portions, or either of them. Beyond the fact that the end piece is folded over the turned-in portions, it does not appear that there is an analogy between this box and the later invention of Wilson. In the King patent there is a more striking resemblance, but the function of the end piece is entirely different. While there are two turned-in portions, with a horizontal slit, and two tongues on the end piece, fitting into such slits, such end piece does not fold over the turned-in portions, and, descending, pass into the aperture, so as to make an inner connection; but the end piece simply closes against and passes into the exterior of such turned-in portions. The result is that the edges of the turned in portions do not act as a fulcrum, nor does the end of the box fold over such fulcrum and fasten on the inside thereof so as to embody the principle of leverage which is suggested in complainant's patent. The capacity of counsel on either side has produced ingenious argument, in which details of similarity and dissimilarity are presented with great force, but there are palpable distinctions in function between the parts of the box in suit and of any of those antedating it. Such salient features have been mentioned.

The second and more difficult question is the defense of noninfringement. The complainant contends that:

"Both boxes are set up and locked into operative position by the use of the 'loose lever clutch principle.' The only difference discernible is that the defendant's tongues project horizontally, instead of vertically, as in the patent, and his slots have been necessarily correspondingly changed from horizontal to vertical."

This is true, and the single question is whether complainant's claim is sufficiently broad to cover a box, where the tongues of the

end piece do thus pass horizontally into the aperture in the turned-in portions. Attention is forcibly called to the language of claim 1:

"A box or lid of a box having turned-in portions provided with apertures or openings, and an end piece provided with a tongue or tongues folded over the upper edges of the turned-in portions, and down into the apertures or openings therein, substantially as and for the purposes set forth."

It is argued by the complainant that the participle "folded" relates back to the substantive "tongue or tongues," and that the word "folded" should be understood as preceding the word "down," so as to read "folded down into the aperture." It is considered that such parsing of the phrase is not correct, but, rather, that the participle "folded" relates to the word "piece," and that the reading should be as follows:

"And an end piece, provided with a tongue or tongues, is folded over the upper edges of the turned-in portions, and is folded down into the apertures or openings."

The tongue or tongues, as distinguished from the end piece, are not folded over the upper edges, but the end piece, with its accompanying tongue or tongues, is folded over the upper edges, and is folded down so that some part thereof, to wit, the tongue or tongues, pass into the apertures or openings. The end piece consists not only of the part that folds over the turned-in sides, but of the tongue or tongues connected therewith; and as this end piece, with its tongue or tongues, is folded over the upper edges of the sides turned in, it passes down, and its appropriate parts (that is, its tongue or tongues) pass into the aperture. This is a very palpable reading of the claim and of the intention of the inventor, and under such interpretation the claim is not broadened beyond its proper merit. The specification states:

"I merely insert or pass the tongue or tuck, e, down into the V-shaped notches or cut-outs, c', c', of the turned-in end portions, c, c, as clearly shown at Figs. 2 and 3. * * * By reason of the V-shaped cuts or notches, two points or lips, $c^2$ are formed on each part, c, and the folded over and down tongue, e, passes in front of the upper set of lips, and in rear of the lower set or series, thus positively checking any tendency of the parts to spring open."

This form of aperture is not a necessary part of the patent, for the specification states:

"Instead of V-shaped notches, notches or cut-aways of other form may be used in conjunction with a tongue to hold the parts together, as described, without departing from the spirit of my invention; and, in lieu of notches or cut-outs, slits or incisions, m, m, or any other aperture or opening, may be made in the portions, c, c, and tongues, g, g, be passed through such slits, and the parts be thus held together, as seen in Figs. 4 and 5."

This language, in connection with what is deemed the proper interpretation of claim 1, illustrates that it was the intention of the patentee to claim any form of aperture, with tongues suitably shaped to enter the same. The argument of the defendant has been carefully examined and considered, but the result is reached that defendant's boxes infringe the complainant's patent. A decree should be entered enjoining the defendant from infringing the complainant's patent. If more specific direction as to the terms of the decree be required, application can be made to the court respecting the same