NATIONAL FOLDING–BOX & PAPER CO. v. ROBERTSON et al

(Circuit Court, D. Connecticut. February 9, 1900.)

No. 1,019.

1. PATENTS—INFRINGEMENT—FOLDING PAPER BOXES.

The Wilson patent, No. 286,360, for an improvement in folding paper boxes, *held* not anticipated, and valid, on motion for a preliminary injunction.

2. SAME—SUIT FOR INFRINGEMENT—DEFENSES.

The fact that the owner of a patent is a corporation alleged to have been formed in violation of the anti-trust law, and that the patent is alleged to have been assigned to it in furtherance of the illegal purpose to create a monopoly and control the price of an article of commerce, is not available to an infringer of such patent to defeat a suit for the infringement.

This is a suit in equity for the infringement of a patent. On motion for a preliminary injunction.

Walter D. Edmonds, for complainant.
Charles W. Comstock and W. E. Simonds, for defendants.

TOWNSEND, District Judge. On motion for a preliminary injunction against infringement of the first claim of patent No. 286,-360, granted October 9, 1883, to Arthur Wilson, for improvement in folding paper boxes. This claim has been sustained by Judge Thomas, after exhaustive consideration of the issues of anticipation and noninfringement, in two opinions in the suit of this complainant against Robert Gair (C. C.; 91 Fed. 905, and 97 Fed. 813). The new evidence introduced related only to patents set up in the answer, but not discussed, in said Gair Case. The defendants relied chiefly on one only of said patents, namely, No. 269,682, to Linnett, which they claim exactly corresponds with the boxes of the patent in suit, except in the use of what are known as the tongues and slits for securing the same, and that this construction was suggested by Linnett when he said, "the parts at the ends being attached together to secure them, as by pasting or otherwise

securing the parts," and they contend that the use of such slits and tongues was well known in the art. As pointed out by Judge Thomas in his carefully considered opinion, the merit of the invention in suit is that the end piece, with its tongues, when caught into said apertures and loosely held therein, closes and holds together the end of the box by means of its lever function. This construction dispensed with the exterior perforations of the boxes of the prior art, and reinforced the sides of the box against strain.

Counsel for complainant says the Linnett patent was not presented for Judge Thomas' consideration, because the patent to Arthur, May 15, 1877, No. 190,803, which was discussed and considered, covered everything embraced in the Linnett construction. The construction of Arthur is nearer to the patented construction than that of Linnett. It is apparent that neither Arthur nor Linnett had any idea of the clutch invention which Wilson devised. All the other questions herein were before Judge Thomas, and were disposed of by him.

The defendants have also filed a plea in abatement alleging that certain partnerships and corporations which were rivals in business, situated in various states, engaged in the manufacture of these boxes, being articles of commerce and in great demand throughout the United States, for the purpose of stifling competition, and controlling and limiting the output of each of said manufacturing concerns, or lessening the amount of production of said goods and articles of commerce, entered into a conspiracy, for the purpose of stipulating and providing for uniform minimum prices of said articles of commerce sold throughout the states, and enhancing the price thereof, and limiting the production of the same, and that, in pursuance of said conspiracy, each of the parties entered into a contract to sell its plant to a new corporation, to be organized under the laws of the state of New Jersey. Said contract was set forth in full. It comprised an agreement between certain firms, persons, and corporations to take stock in said corporation, and provisions for the appraisal of the property of each of the constituent members, and for the allotment to each of them of stock in the new corporation in proportion to such appraisal. The plea in abatement further alleged that said parties further agreed that neither of the persons or companies mentioned in said agreement should engage in the manufacture or sale of said articles of commerce, or directly or indirectly continue in, carry on, or engage in said business of which said articles might form a part, independently of the said National Folding-Box & Paper Company, to be organized as aforesaid, for the period of 49 years, and that during said period the parties should refrain from entering into competition as rivals of said company; and that in pursuance of said conspiracy the parties abandoned the manufacture of such articles, and that said National Folding-Box & Paper Company has carried out all the designs of said parties; and that, in pursuance of said agreement and conspiracy, all the patents have been transferred to said corporation; and that "it was further agreed between the parties * * * that each of the parties to said agreement could and did

manufacture said articles of commerce under patents owned by them prior to the formation of said company," and that such articles "were sold by said parties * * * at uniform prices, and upon the same terms, without respect to the cost of production or the merits of the respective articles"; and that the patent in suit was conveyed to the complainant corporation in pursuance of said conspiracy to restrain the trade in the states where said plants were located. The plea further alleges as follows:

"The direct tendency and the direct result of said conspiracy and agreement between said parties, as aforesaid, was and did, as intended by the parties thereto, create a scarcity of said articles of commerce, and enhance the price thereof, in the states where said plants were located, and throughout the several states where said articles were in use by the public to a great extent; and the said conspiracy, and the natural results of the same, as intended and designed by the parties to said agreement, and the acts of the parties thereto under the same, are all and each in violation of law, in restraint of trade and commerce between the several states, and are directly prohibited by the common law and the laws of the United States, and, as said illegal and unlawful combination of the parties to said agreement, the said National Folding-Box & Paper Company, have no right, power, or authority to sue or plead in the courts of the United States, in any civil action wherein it invokes the aid of the courts of the United States, to protect the plaintiff to further engage in or carry on the business for which it was illegally organized, and especially to protect it as demanded in this suit, and said combination is illegal and void, and your respondents, therefore, pray that the proceeding in the cause may be abated and dismissed."

This plea was argued under an oral stipulation to the effect that, for the purposes of the motion for a temporary injunction, the facts alleged in said plea should be taken as true, so far as they referred to the contents and execution of the agreements therein alleged, but that this admission should not be construed to extend to any innuendoes contained in the plea respecting the purposes of said agreements, except so far as they appeared on the face thereof, nor respecting the intent or animus of the parties thereto.

The conclusions reached dispense with the necessity of resting the decision on the legality of the agreement alleged in the plea in abatement. It does not appear that the original contract was illegal. There are no provisions therein which, directly or indirectly, refer to any restriction of trade or regulation of output or of prices. The parties thereto bound themselves not to engage in like business for 49 years. This was essential to effectuate the transfer of the good will, and is not unusual in such cases. The allegation that it was further agreed that the parties "could and did manufacture," etc., is in direct conflict with the previous allegation of the plea. To sustain this plea, it would be necessary to hold, as claimed by defendants, that a corporation formed in restraint of trade in one state could not, in another state, maintain a suit to restrain the infringement of its patent.

The federal cases chiefly relied on by defendants are Harrow Co. v. Hench (C. C.) 76 Fed. 667, affirmed in 27 C. C. A. 349, 83 Fed. 36, 39 L. R. A. 299; Harrow Co. v. Quick (C. C.) 67 Fed. 130.

Harrow Co. v. Hench, supra, was a suit to enjoin licensees from violating a license contract by selling below the price agreed on therein, and for a decree for the specific performance thereof, which

contract was made with a combination controlling 90 per cent. of the manufacturers of certain harrows in the United States. Said contracts prevented licensees from selling their products at a price less than was set forth in a schedule annexed to the license, so that, as the court said, the corporation is simply clothed with the legal title to the assigned patents, while "the several assignors are invested with the exclusive right to manufacture and sell their old-style harrows under their own patents; but all of them must sell at uniform prices, and upon the same terms, without respect to cost or the merits of their respective styles of harrows, and all the members of the combination are strictly forbidden to manufacture or sell any other kind or style of float spring-tooth harrow than they are thus licensed to make and sell." Judge Acheson refused the injunction, and the court of appeals affirmed his decision, taking the ground that the prior owners were the beneficial owners, with right to continue their business, subject only to the restriction in its management imposed by the contract, and that "the result would be the same, in legal contemplation, if the corporation and licenses had been dispensed with, and the contract had provided simply, as it does, for combination and restraint of competition." This was not an infringement suit, but a suit to compel the performance of an unlawful contract. The decision rests upon the fact that the corporation was organized solely for the purpose of making a combination to restrain competition and trade and to enhance prices.

In the same line, Judge Coxe, in the suit of the same complainant against the same defendant (C. C.; 84 Fed. 226), to restrain infringement of a patent which had been assigned in accordance with said contract, held that, as the contract was illegal and void, the assignment also was void, and solely on that ground dismissed the complaint.

The only opinion in the federal courts cited by defendant which would seem to support the doctrine that an infringer might defend his illegal acts, even in a case where the complainant was a combination formed for the purpose of restraining trade and competition, is Harrow Co. v. Quick, supra, in which the learned judge disposed of the question of infringement on the merits, but, in passing on the defense that this same harrow company was an illegal combination, said:

"It seems to me that the court cannot sustain the present bill without giving aid to the unlawful combination or trust represented by the complainant. The question is not free from doubt, but in a case of doubt I feel it my duty to resolve it in such a way as will not lend the countenance of the court to the creation of combinations, trusts, or monopolies."

The court of appeals, however, said on this point:

"While not prepared, in view of the authorities, to sanction the proposition that the infringer of a patent may escape liability by showing that the legal owner is engaged in a supposed unlawful combination or trust, we do not consider the point." 20 C. C. A. 413, 74 Fed. 239.

And in Columbia Wire Co. v. Freeman Wire Co. (C. C.) 71 Fed. 306, Judge Adams said:

"I would quite agree with the learned judge who wrote that opinion, that the correctness of his conclusion, even in that case, was not free from doubt."

And he refused to apply said doctrine in a case of infringement. The question here presented was discussed by Judge Wallace in Strait v. Harrow Co. (C. C.) 51 Fed. 819. Judge Wallace says:

"The proposition that the plaintiff, while infringing the rights vested in the defendant under the letters patent of the United States, is entitled to stop the defendant from bringing or prosecuting any suit therefor because the defendant is an obnoxious corporation, and is seeking to perpetuate the monopoly which is conferred upon it by its title to letters patent, is a novel one, and entirely unwarranted."

The opinion in Machine Co. v. Smith (C. C.) 70 Fed. 383, is to the same effect. Judge Simonton says:

"The issues are these: Do the complainants hold letters patent of the United States giving them the exclusive right to make, vend, and use certain patentable devices? Have the defendants infringed the rights thus granted? If in procuring these exclusive rights, or if, in their exercise, the complainants have been guilty of fraudulent or improper conduct towards these defendants, the fundamental principles relied on would debar them of any relief in this court. But if, in the absence of these, it is sought to deprive them of their remedy for the infringement of their rights because of their motives in asserting them, such motives are not the subject of judicial inquiry. Strait v. National Harrow Co., 51 Fed. 819. The rule that one coming into equity must come with clean hands is confined to the conduct of the party in the matter before the court, and not to matters aliunde. Courts of equity, as well as courts of law, will not refuse redress to the suitor because his conduct in other matters not then before the court may not be blameless. It is enough if the suitor shows that he has acted justly, fairly, and legally in the subject-matter of the suit.' Beach, Mod. Eq. Jur. § 16, and cases cited."

The distinction between the cases where such a defense might and might not be interposed is stated as follows by Judge Wallace in Strait v. Harrow Co., supra:

"If the defendant had brought suit against the plaintiffs for some breach of contract or violation of its alleged rights, founded upon the combination agreement, then it might become pertinent to inquire into the character of the combination, and ascertain whether the court would enforce any rights growing out of it. But, in a suit brought for the infringement of a patent by the owner, any such inquiry, at the behest of the infringer, would be as impertinent as one in respect to the moral character or antecedents of the plaintiff in an ordinary suit for trespass upon his property. Even a gambler, or the keeper of a brothel, cannot be deprived of his property because he is an obnoxious person or a criminal."

The court of appeals in this circuit said in Light Co. v. Electric Co., 3 C. C. A. 605, 53 Fed. 598:

"They [the owners of the patent in suit] do not lose that right merely because they may have joined in a combination with others, holding other patents securing similar monopolies, which combination may, when judicially examined in a proper forum, be held to be unlawful. We do not feel justified in assuming, upon the facts before us in the present suit, that the use which the complainants propose to make of the injunction—an injunction which seems necessary to secure their monopoly and make their patent fruitful—will be such as to promote any other monopoly. When it shall be made to appear that some one, to whom in fairness and good conscience these complainants should sell their lamps, has been arbitrarily refused them, save upon oppressive and unreasonable terms, it will be time to consider whether the complainants should be allowed to continue in possession of the injunction."

In Soda-Fountain Co. v. Green (C. C.) 69 Fed. 333, Judge Dallas sustained exceptions to such a plea, and ordered it stricken out as irrelevant, immaterial, and impertinent. The motion for a preliminary injunction is granted.