BLOUNT MFG. CO. v. YALE & TOWNE MFG. CO.

(Circuit Court, D. Massachusetts. January 14, 1909.)

No. 469.

1. MONOPOLIES (§ 12*) — CONTRACT IN RESTRAINT OF TRADE — PATENTED ARTICLES.

Where certain contracts between manufacturers of liquid door checks restrained each of the parties in the exercise of its rights under its own patents and in the sale of its articles made thereunder, the contracts were not rendered valid, though in restraint of interstate commerce, because they also authorized each of the parties to use patented inventions belonging to the others.

[Ed. Note.—For other cases, see Monopolies, Dec. Dig. § 12.*]

2. MONOPOLIES (§ 12*)—PATENTED ARTICLES—LICENSE—SHERMAN ACT.

A sale or license of a patented article, with a covenant not to compete, made as an ordinary incident to enhance the value of the thing conveyed, was not within the Sherman anti-trust act (Act Cong. July 2, 1890, c. 647, 26 Stat. 209 [U. S. Comp. St. 1901, p. 3200]).

[Ed. Note.—For other cases, see Monopolies, Dec. Dig. § 12.*]

3. PATENTS (§ 191*)—RIGHT OF PATENTEE- USE—CONTRACTS.

While it is the ordinary privilege of the owner of a patent to use, or not, without question of motive, the grant of a patent confers on the patentee no right not to use his invention, or to agree not to do so, in restraint of trade in that article, except in connection with an assignment of the rights conferred by the letters patent.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 268; Dec. Dig. § 191.*

Power of patentee to control his invention, see note to Heaton–Peninsular B. F. Co. v. Eureka Specialty Co., 25 C. C. A. 280.]

4. MONOPOLIES (§ 12*)—CONTRACT IN RESTRAINT OF TRADE—PATENT ARTICLE—RESTRICTION OF USE.

Contracts between manufacturers of liquid door checks under various patents, by which each agreed to restrict its own trade in the article of his own invention, not as an incident to a grant of rights under patents, but to enhance the price by the removal of competition, and which constituted a general plan to regulate and control the business of dealing in such checks sold in interstate commerce, the plan comprehending the maintenance of price, the pooling of profits, the elimination of competition, and restraint of improvements, constituted a violation of the Sherman anti-trust act (Act Cong. July 2, 1890, c. 647, 26 Stat. 209 [U. S. Comp. St. 1901, p. 3200]), and were therefore unenforceable.

[Ed. Note.—For other cases, see Monopolies, Dec. Dig. § 12.*]

In Equity. On demurrer to bill of complaint.

George L. Mayberry and W. H. Leonard, for complainant.
Fish, Richardson, Herrick & Neave, for defendant.

BROWN, District Judge. This is a demurrer to a bill for an accounting in accordance with the terms of a contract concerning the profits arising from the manufacture and sale of liquid door checks.

This contract, Exhibit A, is made part of the bill. The bill alleges the contemporaneous making of a contract between the complainant and the P. & F. Corbin Company, Exhibit B. By reference this is made a part of the contract, Exhibit A. The Blount Manufacturing

Company, complainant, being a party to both contracts, we may conveniently distinguish them by calling Exhibit A the "Yale & Towne contract," and Exhibit B the "Corbin contract."

I am of the opinion that the true contractual relations between this complainant and defendant must be sought in both contracts, and that the validity of the Yale & Towne contract is to be determined by examination of the effect of both.

In an accounting under the Yale & Towne contract the complainant's share of profit would be determined, in accordance with paragraph 7, by finding the difference between the net prices actually received and the arbitrarily fixed "contract costs" set forth as an agreed basis for accounting; said difference to be increased or diminished by one-half of the net amount received or paid in settlements between the Blount Manufacturing Company and the Corbin Company. The Yale & Towne Company is thus directly interested in the Corbin contract. It has signed as an associate party, and has assented to the provisions of, the Corbin contract, as appears in paragraph 17 of that contract. Paragraph 5 of the Yale & Towne contract also provides that prices are to be determined from time to time by agreement between the Blount Manufacturing Company, the Yale & Towne Manufacturing Company, and the Corbin Company.

Such relations are established between the complainant, the defendant, the Corbin Company, and the Russell & Erwin Company that the contracts before us must be regarded as related parts of a general plan to regulate and control the business of dealing in liquid door checks. The plan comprehends the maintaining of prices, the pooling of profits, the elimination of competition, and the restraint of improvements.

If relating to ordinary articles of trade or commerce, it seems reasonably clear that these contracts would be in violation of Act Cong. July 2, 1890, c. 647, 26 Stat. 209 (U. S. Comp. St. 1901, p. 3200), known as the "Sherman Anti-Trust Act," and therefore unenforceable.

The complainant contends that the demurrer should be overruled, because such contracts are legal and valid when the subject-matter of the contract comprises solely articles the manufacture and sale of which are protected by patents. The amended bill alleges in effect that all liquid door checks manufactured or sold at the time of the execution of the contracts embodied patented devices or improvements.

While the language of the contracts is broad enough to cover unpatented as well as patented articles, yet in view of the allegations of the amended bill I should hesitate to sustain the demurrer merely on the ground that the contract covers articles which do not embody patents. The principal question is whether the fact that the articles to which the agreements relate embody patented inventions is sufficient to make the Sherman act inapplicable. This question was not passed upon by the Supreme Court in Bement v. National Harrow Co., 186 U. S. 70, 22 Sup. Ct. 747, 46 L. Ed. 1058. That decision related to restraints and conditions imposed in connection with the grant of patent rights.

· Rubber Tire &. Wheel Company v. Milwaukee Rubber Company, 154 Fed. 358, 83 C. C. A. 336, and Indiana Manufacturing Company,

154 Fed. 365, 83 C. C. A. 343, are cited by the complainant, but the decisions are not directly in point.

It seems self-evident that a contract which is only coextensive with the monoply conferred by letters patent, and which creates no additional restraint of trade or monopoly, does not conflict with the Sherman act. The monopoly granted by letters patent is of a particular invention. Devices thus protected by patents are as a matter of fact in commercial competition with both patented and unpatented devices. A contract whereby the manufactures of two independent patented inventions agree not to compete in the same commercial field deprives the public of the benefits of competition, and creates a restraint of trade which results, not from the granting of letters patent, but from agreement. While the monopoly of the patented articles is not increased, the monopoly of the commercial field is increased by the "unified tactics" as to prices.

This question was directly considered by the Circuit Court of Appeals of the Third Circuit in National Harrow Company v. Hench, 83 Fed. 36–38, 27 C. C. A. 349, 351, 39 L. R. A. 299. The opinion says:

"The fact that the property involved is covered by letters patent is urged as a justification; but we do not see how any importance can be attributed to this fact. Patents confer a monopoly as respects the property covered by them, but they confer no right upon the owners of several distinct patents to combine for the purpose of restraining competition and trade. Patented property does not differ in this respect from any other. The fact that one patentee may possess himself of several patents, and thus increase his monopoly, affords no support for an argument in favor of a combination by several distinct owners of such property to restrain manufacture, control sales, and enhance prices."

See, also, National Harrow Company v. Hench (C. C.) 76 Fed. 667; National Harrow Company v. Quick (C. C.) 67 Fed. 130.

The bill does not aver that the articles made by each company embody features covered by the patents of the other. While the contracts provide that the parties are licensed to use patented inventions of the other, this does not alter the fact that by the terms of the contracts each party is restrained in the exercise of its rights under its own patents, and in the sale of articles made solely under its own patents.

The right of the owner of letters patent to assign rights to manufacture, use, and vend, upon condition that the assignee shall maintain certain prices, and to agree not to compete with his assignee or to license others to compete, is recognized in Bement v. National Harrow Company, 186 U. S. 93, 22 Sup. Ct. 747, 46 L. Ed. 1058.

Whether a patentee may not lawfully make such a license agreement in consideration of the making of a like license agreement by another patentee is a somewhat interesting question. If, as a result of mutual licenses, there is put upon the market an article embodying the inventions of both patentees, so that as the effect of exchange of licenses a new article of commerce is developed, it is doubtful if the public is thereby unlawfuly deprived of any of its rights or expectations of free competition. Where, however, each patentee continues to make his own goods under his own patents, and seeks to enhance his profits by an agreement with competitors, who make either patented or unpatented articles, then it seems to follow that the agreement of

each to restrain his own trade cannot be regarded merely as an incident to the assignment of patent rights. The patentee then restrains his own trade, not for the purpose of enhancing the value of the license which he grants, but for the purpose of enhancing the value of his trade by removing competition. A sale or license, with a covenant not to compete, made as an ordinary incident to enhance the value of the thing conveyed, is not within the Sherman act. Cincinnati Packet Company v. Bay, 200. U. S. 179–185, 26 Sup. Ct. 208, 50 L. Ed. 428; U. S. v. Freight Association, 166 U. S. 329, 17 Sup. Ct. 540, 41 L. Ed. 1007.

By the terms of the present contracts each party limits its trade in goods made under its own patents.

In Rubber Tire Company v. Milwaukee Company, 154 Fed. 362, 83 C. C. A. 336, on which complainant relies, it was said in the opinion of the majority of the court:

"The Sherman law contains no reference to the patent law. Each was passed under a separate and distinct constitutional grant of power. Each was passed professedly to advantage the public. The necessary implication is not that one iota was taken away from the patent law. The necessary implication is that patented articles, unless or until they are released by the owner of the patent from the dominion of his monopoly, are not articles of trade or commerce among the several states."

Judge Grosscup was unable to concur in this proposition.

The question whether agreements concerning patented articles are within the provisions of the Sherman anti-trust act must be determined by a consideration of the nature of the rights conferred by the grant of a patent.

While it. is the ordinary privilege of the owner of patent rights to use or not to use them without question of motive, the grant of letters patent confers upon the patentee no right not to use his invention, or to make an agreement in restraint of trade in that article, save in connection with an assignment of the rights conferred by letters patent. The proposition that an agreement not to manufacture, or to restrain trade, is within some rights of nonuse conferred upon a patentee, seems unsound, if we consider the nature of the grant of letters patent. The right of the patentee or of his assignee to withhold the invention is quite apart from any grant contained in the letters patent. The privilege of restraining others is granted to the owner of letters patent. He is given no right or privilege to restrain himself. By the terms of the patent he has the exclusive right to make, use, and vend. The right to make, use, and vend he has without the grant of letters patent. When we say that a patent grants an "exclusive right," we do not mean that the right to make, use, and vend is granted, but only that the patentee's existing right is made exclusive by the grant.

In the Paper Bag Patent Case, 210 U. S. 424, 425, 28 Sup. Ct. 748, 753, 52 L. Ed. 1122, it was said with reference to previous decisions relating to the nature of the patent grant:

"Those cases declare that he receives nothing from the law that he did not have before, and that the only effect of the patent is to restrain others from manufacturing and using that which he has invented. United States v. Bell Telephone Company, 167 U. S. 224–249, 17 Sup. Ct. 809, 42 L. Ed. 144."

Bloomer v. McQuewan, 14 How. 539–549, 14 L. Ed. 532, is cited:

"The franchise which the patent grants consists altogether in the right to exclude every one from making, using, or vending the thing patented without the permission of the patentee. This is all that he obtains by the patent."

The right of a patentee to suppress his own rests upon ordinary considerations of property right. The public has no right to compel the use of patented devices or of unpatented devices, when that is inconsistent with fundamental rules of property. When a patentee agrees, however, to restrain his own trade in the article of his own invention, not as an incident to a granting of rights, but for the purpose of enhancing his price by the removal of competitors, he is then quite outside the sphere of any right granted him by the government. He may engage in interstate trade or not as he pleases; but, being engaged in that trade, he is subject to all restrictions upon interstate traders.

That patented articles are an important factor in interstate commerce must be especially apparent to those who have been engaged in the administration of patent law. If they are within the ordinary signification of the broad terms of the Sherman act, patented articles can be excluded only by showing some conflict or inconsistency between the patent law and the Sherman act.

In Bement v. National Harrow Company, 186 U. S. 92, 22 Sup. Ct. 747, 46 L. Ed. 1058, the court was of the opinion that the statute does not refer to a restraint which may arise from reasonable and legal conditions imposed upon the assignee or licensee, restricting the terms upon which the article may be used and the prices to be demanded. The restraint which arises from joint agreements between independent patentees as to the course of conduct each will take results solely from voluntary contract, and in no sense from the exercise of rights granted by letters patent. The patentee may grant to others rights otherwise denied them, and may limit those rights as he pleases. He may, by assignment of his exclusive rights, exclude himself; for the rights of exclusion granted by the patent are transferable. Has he, in spite of the Sherman act, a full right to agree that neither he nor his assigns will compete with other persons, or that trade in his invention will be wholly or partly suppressed or restrained in order to enhance the profits of the trade of others in other competing articles, patented or unpatented?

It must be recognized that an inventor stands in a special relation to the product of his own faculties. When he has secured his patent, he may derive profit from an agreement not to use it. In the Paper Bag Case, 210 U. S. 429, 28 Sup. Ct. 748, 52 L. Ed. 1122, there was involved the question whether a patentee who held his patent in nonuse had a standing in equity to restrain infringement. Upon facts presented in argument the court observed:

"It is disputable that the nonuse was unreasonable or that the rights of the public were involved."

There are sound reasons for holding that the mere fact of nonuse is insufficient for denying relief by injunction against infringement. While the Sherman act cannot be so applied as to deprive the patentee

of the profits arising from the use of his invention by himself or others, or to deprive him of the right to make the usual restrictions necessary to preserve the value of the monopoly conferred by letters patent, yet a logical application of the proposition that all that letters patent convey is a right to exclude others, and to assign such a right of exclusion, leads to the conclusion that an agreement whereby the owner of the patent agrees to restrain his own trade may be as much within the prohibition of the Sherman act as any other agreement of the same character.

It is a fact, familiar in commercial history, that patent rights have a commercial value for purposes of extinction; that many patents are purchased in order to prevent the competition of new inventions and of new machines with old machines already installed. The equitable status of an owner of a patent who has purchased and held it in nonuse for this purpose is still an open question, and was not determined by the Paper Bag Patent Case. An attempt to make profit out of letters patent by suppressing the invention covered thereby is outside the patent grant, and is so far removed from the spirit and intent of the patent law that the mere fact that an inventor may make a profit by suppressing his invention is not a sufficient reason for holding the Sherman act inapplicable to agreements affecting patented articles. If there is secured to the patentee all profits legitimately arising from the manufacture, use, and sale of his invention, this is all that is within the terms of the grant. To prohibit contracts for the suppression or restraint of his own trade by the application of the Sherman antitrust act is not inconsistent with his right to manufacture, use, and vend. That the Sherman act interferes with some supposed right, granted by the patent, to suppress an invention, is an unsound proposition, for the reason that letters patent grant no such rights, either in terms or by reasonable implication. When no question of the value of the right of excluding others is involved, I am unable to find in the patent law any reason for upholding an agreement for the suppression or restraint of trade in a patented article against the provisions of the Sherman act.

Granting that nonuse of an invention is fully within the right of the owner of a patent, it does not follow that he may by agreement bind himself to nonuse, save in connection with an assignment of his letters patent. Ownership of a patent involves no obligation to use, nor does ownership of other property. Nonuse ordinarily violates no law; but contracting with another, putting it in the power of another to compel one not to use, is a contract in restraint of trade, designed for the purpose of suppressing competition.

Section 4884 of the Revised Statutes (U. S. Comp. St. 1901, p. 3381) defines the nature of a right conferred upon the patentee. It is an assignable and heritable exclusive right to make, use, and vend. The profit which arises from suppressing an invention, from nonuse, flows from commercial tactics, and not from the use of the invention. The public interest which forbids contracts in restraint of trade arises from no right in the public to create trade by compulsion, but only from the expectation of the ordinary course of conduct, and the harmful results of interference with it by monopolistic schemes.

The inventor who has not patented his invention cannot make an agreement in restraint of interstate trade without violating the Sherman act, even though he is in fact an inventor. The rules of public policy, expressed in the Sherman act, apply to him, and I do not think are affected by his taking out a patent, save in the single particular of an assignment or license.

The object of the constitutional provision upon the subject of patents, etc., was:

"To promote the progress of science and useful arts by securing for limited terms, to authors and inventors the exclusive right to their respective writings and discoveries."

The suppression of intellectual products for the preservation of the old market does not promote the progress of science and the arts. A patentee who agrees to suppress his invention is not promoting it. He is not deriving his profit from its promotion, but from manipulation of the market. It is no part of the constitutional scheme, or of the scheme of the patent laws, to secure to inventors a profit from the suppression of their creations. The true rule seems to me to be well expressed by Judge Seaman in Indiana Manufacturing Company v. J. I. Case Threshing Machine Company (C. C.) 148 Fed. 21–25:

"I am of the opinion that such combination must be limited to the express policy and object of the patent grant—monopoly in beneficial use of a specific invention—and when extended beyond that purpose by concert of action may thus be brought within the inhibition of the general law."

To limit the application of the Sherman act merely because profits may be made by a patentee in the course of business strategy seems to me to be unsound, for the reason that it misinterprets the language of the patent law, and perverts its spirit, and excludes from the Sherman anti-trust act a very considerable class of agreements which are quite as objectionable as agreements covering nonpatented articles.

Is it possible that the manufacturers of automobiles, of typewriters, of shoe machinery, or spinning machinery, are without the scope of the Sherman act for the reason that their machines generally "embody one or more patented improvements"?

Regard must be had to the actual conditions of interstate trade and to the general course of combination. The reasons for enacting the Sherman law seem quite as applicable to articles of this character as to articles having no connection with patents.

The Sherman act is not inconsistent with any rights acquired by the patentee when it prevents agreements in restraint of trade which are not designed to make valuable the right to use. There is no inconsistency between the grant of an exclusive and assignable right to make, use, and vend, and the prohibition of an agreement restraining or suppressing the sale of the article in interstate commerce, because any profit from such an agreement does not arise from the value of making, using, and vending. There is no inconsistency between the proposition that an inventor may withhold his invention from use as he sees fit, and the proposition that he may not make an agreement whereby, for the advantage of a competitor, trade in his patented article is restrained or suppressed.

166 F.—36

Though an invention may be suppressed by the patentee or his assignee, yet the fact that there are now two ways of suppressing a patent is no reason for disregarding a statute designed to prevent a third way.

In the consideration of this case I have dwelt principally upon the broad contention that the Sherman anti-trust act has no application to patented articles. It seems quite clear that an agreement in restraint of trade, though it relates to patented articles, may tend to create a monopoly which is different from that conferred by grants of letters patent.

Combinations between owners of independent patents, whereby, as part of a plan to monopolize the commercial field, competition is eliminated, are within the Sherman act, for the reason that the restraint of trade or monopoly arises from combination, and not from the exercise of rights granted by letters patent. As by the terms of the contracts under consideration the owners of distinct patents each agreed to restrain its own interstate trade, I am of the opinion that the contracts are in these particulars obnoxious to the Sherman anti-trust act.

I am further of the opinion that upon the present bill, which is a bill for the enforcement of the provisions of an unlawful contract, no relief of other nature can be granted.

The demurrer is sustained.