### GENERAL ELECTRIC CO. v. ANCHOR ELECTRIC CO. et al.

(Circuit Court, S. D. New York. July 18, 1900.)

PATENTS—INFRINGEMENT—INCANDESCENT LAMP SOCKET.

The Tournier patent, No. 559,232, for a socket for incandescent lamps, the base of which consists of a substantial block of porcelain or other insulating material, in which the contact key and circuit terminals are incased, covers a device which, as a complete structure, was not anticipated, and, in view of its immediate general adoption and commercial success, cannot be denied patentable invention. Claims 1, 2, 3, and 4 construed, and *held* infringed. Claim 9, which is limited to an insulating ring, used between the outer shell and the socket, *held* void for lack of invention, in view of the prior art.

In Equity. Suit for infringement of patent. On final hearing.

Frederic P. Fish and Saml. O. Edmonds, for complainant.
Edward P. Payson, for defendants.

SHIPMAN, Circuit Judge. This bill in equity is based upon the alleged infringement by the defendant of letters patent No. 559,232, dated April 28, 1896, to Julius Ch. Tournier, assignor to the complainant, for a socket for incandescent lamps. Claims 1, 2, 3, 4, and 9, the only claims now in controversy, are as follows:

"(1) In an incandescent lamp socket, an insulating block, circuit terminals, and a circuit-controlling key, with a metallic tip and operating spring mounted thereon, in combination with a metallic socket mounted on the insulating block: the metallic tip of the controlling key being adapted to make contact with the shell and close the circuit.

"(2) In an incandescent lamp socket, as a new article of manufacture, an insulating block, formed with passages in its edges for the circuit wires, a transverse passageway for the insertion of a controlling circuit key shaft, its bearings, and a controlling spring, a cavity at one end for the location of a rotary metallic tip of the key shaft, and a cavity at the other end for the location of one of the binding screws and brackets, a cavity at one side of the block for the location of the other binding screw and bracket, and a contact arm, as herein set forth.

"(3) In an incandescent lamp socket, an insulating block, formed with a transverse cavity. a rotary circuit-controlling key, and a spring and contact tip located in this cavity, binding screws located in cavities in the insulating block, one connected with the key shaft and the other with a metallic contact arm projecting over the top of the block, and a shell or socket mounted on the

top of a block, and adapted to complete the circuit with a lamp by contact of the contact tip therewith.

"(4) In a socket for incandescent lamps, the combination with the insulating base thereof and a key having a contact tip, of a lamp-socket cylindrical shell mounted on one end of said base, and so arranged in relation to the key tip that the latter contacts with the lamp-socket cylindrical shell to close the circuit, as set forth."

"(9) As a new article of manufacture, an insulating ring for incandescent lamp sockets, formed of a sheet of elastic insulating material provided with a circumferential bead, as and for the purpose set forth."

The original socket which was made for the Edison filament lamp was a hollowed, cup-shaped, insulated wooden block, in which the circuit breaker was a thumb screw. The socket, as a whole or in its parts, was ill-adapted to the needs of a filament lamp. It speedily disappeared, and a porcelain socket took its place, which, instead of a block, had a single insulating disk of porcelain upon which the various metallic parts were secured. The disk was weak and fragile; the metallic parts, not being separated from each other by insulation, produced abundant short-circuiting; and the screw shell was permanently included in the circuit and electrified. A change was made to a socket of two thin separated disks, but the trouble arising from noninsulation of the metallic parts, short-circuiting, and frequent breakage did not abate. Each of these sockets was in turn the standard article in common use, until the Tournier device was invented for the purpose of having a socket which should overcome their annoying and expensive defects. Tournier discarded disks, and made a substantial cylindrical supporting block of porcelain or other insulating material the base of the socket. He cut away its edges for the passage of the circuit wires, made cavities or recesses in the sides of the block, in one of which was mounted a binding screw secured to the key shaft, and in the other another binding screw connected with a metallic contact arm projecting over the top of the block was mounted. A transverse passageway was cut through the block in which the circuit-controlling key shaft and its frame and operating spring were mounted, and "this passageway opens into an enlarged recess, into which projected the end of the key shaft, and within which operates the contact block." The screw-threaded metallic shell of the socket is permanently mounted on the top of the porcelain block, "and in such relation to the contact block or surface of the key mechanism as to receive its current directly from that block or surface, and directly transmit it to the lamp." The specification describes the way in which the circuit is completed as follows:

"When the incandescent electric lamp is screwed into the threaded shell or socket, 15, one terminal on its base makes contact with the sleeve, 15, and the other with the projecting arm, 6, the circuit being thus completed through the lamp, except between the shell, 15, and the rotary block, 20. Connection at this point is made and broken by means of the circuit-controlling key, 4, by turning the latter so that the rotary block, 20, is snapped with a lost motion into contact with the threaded shell or socket, 15."

Some of the advantages which are manifest in the Tournier socket, and which the mechanical experts for the complainant notice, are the strength of the insulating base; the incasing of the contact key and circuit terminals within this base, thereby preventing accidental

contact with the exterior metallic shell; the separation of the terminals and the metallic working parts by walls of porcelain, and the consequent reduction of liability to short-circuiting; the disconnecting of the threaded shell from the circuit, except when the lamp is in place or the key is closed; and the simplicity, compactness, and strength of the parts, whereby loosening of the metal pieces was avoided. The socket was placed on the market in the fall of 1894, its advantages were speedily recognized, it has had an extraordinary success, and during the year 1899 more than 2,000,000 Tournier sockets were sold by the complainant.

Claim 1 is for an insulating block, not a disk or a wafer, with circuit terminals and a circuit-controlling key, provided with a metallic tip and operating spring mounted on the insulating block, in combination with a metallic socket or threaded shell mounted on the block; the metallic tip of the key being adapted to make contact with the shell and close the circuit. Claim 2 included the patented features of construction of the insulating block or base, and is an important claim, because the method of construction by which the several parts are arranged, incased, and separated in the insulating block is the conspicuous portion of the invention, and created its utility and success. The claim includes (1) passages or grooves in its edges for the circuit wires; (2) a transverse passageway for the insertion of a controlling circuit key shaft, its bearings, and a controlling spring; (3) a cavity at one end for the location of a rotary metallic tip of the key shaft or rotary contact block; (4) a cavity at the other end for the location of one of the binding screws and brackets, which cavity receives the thumb piece of the key shaft; (5) a cavity at one side of the block for the location of the other binding screw and bracket, and a contact arm. Claims 3 and 4 do not require an analysis.

The learned expert for the defendant was embarrassed in the attempt to discover an anticipation of either of these four claims. An insulating block was easily found, if a disk or thin piece of porcelain, with holes in it, can be called the "block" of either claim of the patent; but this construction was easily seen to be inadmissible. The expert therefore says:

"I do not pretend to have found in the prior state of the art in any one structure the exact subject-matter of claims 1, 2, 3, and 4, when those claims are interpreted to mean an assemblage of the exact elements or structures described and shown in complainant's patent. If the elements recited are to be read broadly, as they are expressed in some of the claims at least,—as, for instance, 'an insulating block,'—I have, as I have before pointed out, found what seemed to me structures embracing all the elements as specified in some of the claims in a single structure; but if these elements are to be interpreted as meaning the elements illustrated and described in the specification, and as they are in some instances expressed in the claims, I do not find such an assemblage in any one previous structure."

He found the nearest approach to these four claims in patents 251,554 (issued December 27, 1881, to T. A. Edison), 451,656 (issued May 5, 1891, to Deacon & Wightman), 484,580 (issued October 18, 1892, to Bergmann), and 498,758 (issued June 6, 1893, to Ball & Metzger), and in prior exhibits,—Newton Electric Company sockets Nos. 1 and 2, Star Electric Company socket, and "genuine T. H. socket with

adapter." The Deacon & Wightman patent had no insulating block and no metallic socket mounted thereon, and the metallic tip of the key does not make contact with the shell. The Ball & Metzger patent does not have the insulating base of Tournier upon which the parts of the socket can be mounted, or the key with a metallic tip, or a key adapted to make contact with the shell and close the circuit. The Bergmann patent had neither of these elements, nor a shell mounted on one end of the block. The wooden cup-shaped base of Edison's patent was not the insulating block or base of the Tournier claims, and its thumbscrew was not Tournier's contact tip; neither did Edison have a screw-threaded shell mounted on one end of the base, or its equivalent. The Newton sockets have no metallic socket mounted on the insulating block, the screw-threaded shell of the Star socket is permanently in the circuit, and the T. H. socket with adapter has no insulating block. Inasmuch as the gist of the Tournier invention consists in his improved solid insulating block, which produces safety and permanence by its housing of and its relation to the various metallic parts, it is not strange that no anticipation could be found, either in the pre-existing defective disk-shaped structures or in the Edison wooden cup-shaped article, which speedily disappeared from use.

The defendant seeks relief from its inability to find that the patent in suit had been anticipated by the assertion that every separate element was old, and that no invention was either required or exercised in assembling the various elements in the combination in which they appear in the Tournier structure. The insulating block of the patent, as constructed and arranged to become the receptacle of the various metallic parts, was a novelty, and in its peculiar characteristics it had no predecessor. It is a waste of time, in view of the mass of pre-existing patents, the large majority of which were failures, the development of the Tournier device, which was carefully wrought out by a change in the character of the insulating base, so as to avoid the defects of the disk sockets, and the complete success of the structure, to deny its patentable character.

Claim 9 of the patent is for a narrow invention, and consists of a wide ring or sheet of elastic fibrous material between one end of an outside cylindrical shell and the threaded socket. The ring has an exterior bead, and is sprung-into place between the socket and the outside shell, and the bead engages with a circular groove on the inner face of the shell. The patentee says that it was old to make a groove in the outer shell of a lamp socket, and to spring into place in the groove a split insulating ring, but that sufficient insulation was not provided. The improvement of the patent was a sheet of elastic insulating material provided with a circumferential bead intermediate of the edges of the ring. This beaded ring was new, and was useful; but I think that it was a mechanical expedient, in view of the prior art.

The defendant has, with painstaking care, copied the Tournier socket, except in one particular, and has been engaged in manufacturing and selling it. In the particular alluded to, a small portion of the flange of the threaded shell was cut away, because it was of too weak metal, and was supplied by a piece of thicker metal, against which the

contact block impinges when the circuit is closed. This difference is too unimportant to be the subject of discussion. Let there be a decree against the infringement of claims 1, 2, 3, and 4, and for an accounting.